[Civ. No. 6778. First Appellate District, Division One.—March 15, 1929.]

G. V. CARTER, Petitioner, v. LISLE S. GREEN et al., Respondents.

Clark, Nichols & Eltse for Petitioner.

Lovett K. Fraser for Respondents.

THE COURT.—A proceeding in *mandamus* to compel respondents above named to call a special election in the city

of Albany for the purpose of determining whether that city shall be consolidated with the city of Berkeley. The two cities are contiguous, the city of Berkeley having the greater population and the larger number of electors.

Section 2 of the Municipal Consolidation Act of 1913 (Stats. 1913, p. 577), provides as follows: "Whenever a petition signed by not less than one-fourth in number of the qualified electors of any municipal corporation, as shown by the registration of electors of the county in which such municipal corporation is situated, is filed with the legislative body thereof asking that such municipal corporation and another municipal corporation contiguous thereto, designated in such petition and having a greater population, be consolidated, such legislative body must without delay call a special election and submit to the electors of such municipal corporation the question whether such municipal corporation shall be consolidated . . . " It is admitted that on October 1, 1928, there was filed and presented to respondents at their regular meeting a petition, purporting to be signed by 1,557 qualified electors of the municipality, requesting respondents to call a special election and submit to the electors the above question. While the statute requires no action by the city clerk nor any certificate by him as to its sufficiency (*Hirons* v. *Clare*, 38 Cal. App. 608 [177 Pac. 291]; *People* v. *Town of Ontario*, 148 Cal. 625 [84 Pac. 207]), respondents, as they might do (*Wolfskill* v. *City Council, etc.*, 178 Cal. 610 [174 Pac. 45]), referred the petition to him for the purpose of ascertaining the number of qualified electors who had signed the same. It is admitted that the number of such signers necessary to call the election was 1,135. The clerk, in a communication addressed to respondents, stated that he had examined the signatures attached to the petition, and found that forty-two names thereon did not appear on the Great Register; that seven signatures did not compare with those on the pages of the Register; that eleven names were duplicated, and that 1,211 signers did not affix the date of signing. Whether the names of the signers last mentioned appeared on the registration records was not stated. He also certified that no affidavits by the persons who circulated the petition were attached thereto; and further, that it did not appear therefrom under what act of the legislature petitioner wished the

election called. Respondents thereupon rejected the petition and refused to call the election.

Neither the Consolidation Act of 1909 (Stats. 1909, p. 282), nor the Act of 1913 (Stats. 1913, p. 577) requires the affidavits of those who circulate the petition to be attached, and the petition filed with respondents sufficiently shows that petitioner was proceeding under the latter act.

The verified petition in the present proceeding alleged that the election petition was in fact signed by over one-fourth of the qualified electors of the municipality. This allegation was met by a general denial by respondents, which was insufficient to put the matter in issue (*Hirons* v. *Clare, supra*); but this court notwithstanding caused the petition to be referred to the superior court of Alameda County for determination, and according to its findings the petition was signed by more than one-fourth of such electors within two weeks preceding its presentation to the board. It is not claimed by petitioner that the signatures of 1,211 signers referred to in the clerk's statement were dated by them. It, however, appears that dates were affixed thereto, but by whom is not shown. In passing upon the sufficiency of such a petition with respect to the number of qualified electors who have signed the same the statute expressly limits the source of information "to the registration of electors of the county in which such municipal corporation is situated" (Stats. 1913, p. 578, sec. 2); and in determining the question the council acts in a ministerial capacity (*Wolfskill* v. *City Council, supra*). Here, as in other cases, where the duty is ministerial, the obligation to call the election depended upon the determination of prerequisite facts; but where such facts exist and are established by sufficient proof the duty is mandatory and its performance may be compelled (*Tulare Water Co.* v. *State Water Com.*, 187 Cal. 533 [202 Pac. 874]; *Puterbaugh* v. *Wadham*, 162 Cal. 611 [123 Pac. 804]; *Stockton R. R. Co.* v. *Stockton*, 51 Cal. 328; *People* v. *Supervisors*, 45 Cal. 395; *Hirons* v. *Clare, supra*). Respondents contend, however, that section 1083a of the Political Code, which provides that "wherever by the constitution or laws of this state any initiative, referendum, recall or nominating petition or paper, or any petition or paper, is required to be signed by qualified electors . . . such signers shall at the

time of so signing such petition or paper affix thereto the date of such signing," not having been complied with by a number of the signers equal to one-fourth of the qualified electors of the municipality the petition was properly rejected. The purpose of the statute was to guard against signatures by persons who are not qualified electors at the time of signing the petition (*Chester* v. *Hall*, 55 Cal. App. 611, 619 [204 Pac. 237]); and it has been held that noncompliance therewith is a justification for refusal by the proper officer to certify as sufficient the names of the signers as to whose signatures the dates of signing are not affixed (*Boggs* v. *Jordan*, 204 Cal. 207 [267 Pac. 696]; *Chambers* v. *Glenn-Colusa Irr. Dist.*, 57 Cal. App. 155 [206 Pac. 773]). But, as was in effect held in the above cases, where the officer whose duty it is to determine the sufficiency of the petition from the registration records found the same to have been signed by the requisite number of qualified electors, the fact that the dates of signing were not affixed by them but by another will not render void the proceedings based thereon. This was not equivalent, however, to holding the above provision to be merely directory, or that such officer would be bound to act notwithstanding the signers had failed to comply with the statute; for, as the court said in *Chambers* v. *Glenn-Colusa Irr. Dist.*, *supra*, "The requirement is, of course, plain and unequivocal, within the power of the legislature to prescribe, and there is no good reason for holding it to be otherwise than mandatory."

It is contended that it inferentially appears from certain letters written by the clerk to the attorneys for the petitioner, and which were set forth in his petition to this court, that the former did in fact ascertain from the registration records that the election petition was signed by the requisite number of qualified electors, and that having done so the board was not justified in refusing to act thereon. But whatever may have been the facts known to the clerk, so far as shown, he did not so certify to the board. The question here presented is, what did the petition with the statement made by the clerk as to its sufficiency show to respondents; and we are to determine whether the writ should issue by a consideration of the situation as presented to them (*Chambers* v. *Glenn-Colusa Irr. Dist.*, *supra*).

In view of the foregoing we feel bound to hold that the petition did not substantially comply with the requirements of the statute, and that it was consequently not the duty of the respondents to act thereon.

The writ is denied.

A petition for a rehearing of this cause was denied by the District Court of Appeal on April 13, 1929.