[Civ. No. 8895.   Fourth Dist., Div. One.   Apr. 14, 1969.]

CHRISTWARD MINISTRY, Plaintiff and Appellant, v. COUNTY OF SAN DIEGO, Defendant and Respondent.

---

*Retired Presiding Justice of the Court of Appeal sitting under assignment by the Chairman of the Judicial Council.

Hillyer & Irwin, Ronald R. Hrusoff, Carstens, Todd, Wright & Toothacre, Edward M. Wright and Norman R. Allenby for Plaintiff and Appellant.

Bertram McLees, Jr., County Counsel, and John McEvoy, Deputy County Counsel, for Defendant and Respondent.

COUGHLIN, J.—Plaintiff is a nonprofit corporation organized and operated for religious purposes; owns 640 acres of land, known as Questhaven, which it claims is used exclusively for religious purposes; applied for an exemption from taxation under the provisions of Revenue and Taxation Code section 214; was granted an exemption for 40 acres together with the improvements thereon, except six dwellings leased to elderly persons who resided on the property; was denied an exemption for the remaining 600 acres; paid taxes on the latter, under protest, for the fiscal year 1965-1966 in the sum of $2,732.90; brought this action to recover that payment, claiming the 600 acres were exempt; and appeals from the judgment denying repayment.

The guiding concept of the Christward Ministry is finding God through nature. Questhaven was founded as a religious retreat to be used in the furtherance of this concept. The property is largely in a natural state; includes an original purchase of 400 acres located on the floor of a valley; and a subsequent purchase of 200 acres on adjacent ridges and hilltops.

Of the 40 acres exempted by the assessor, 31 thereof comprised a central area improved with such facilities as a chapel, a church, administration building, director's house, roads, a dam site, reservoir site, incidental water facilities and parking accommodations; and the remaining nine consisted of small sites used for shrines and a system of trails connecting them

with the central area. Adjoining or within easy walking distance of the trails are numerous areas used for rest and meditation. The shrines and trails extended throughout the property.

The 600 acres not exempted surrounded the shrine sites and trails; were not improved; and were maintained in their natural state.

Four major retreats are held at Questhaven during the year, one each in the Spring, Summer, Fall and Winter. Numerous retreats are held each weekend. There was testimony in the year 1965 between 2,000 and 3,000 people attended these retreats. Retreatants are encouraged to use the trails for access to the shrines, meditation, spiritual instruction and nature study.

A portion of the unimproved area is being held for future improvement as outlined in a master plan contemplating a building program to meet the needs of the Christward Ministry until the year 2,000.

One of the purposes for acquiring the 200 acres along the adjacent ridges and hilltops was to provide a "greenbelt" or buffer which would assure retreatants the solitude and serenity incident to achievement of the religious purpose in making a retreat.

The court upheld the action of the assessor; concluded 40 acres of plaintiff's property was exempt; also concluded the additional 600 acres were not exempt; and decreed the tax for the fiscal year 1965-1966 properly was levied against the latter. This decision was premised upon findings the 40 acres exempted consisted of the 31-acre central area containing the improvements heretofore noted and of "an allocation of 9 acres representing some 20 miles of trails over the entire 640 acres"; that "all of the 600 acres of real property for which an exemption was denied by the Assessor . . . is vacant, unimproved, raw land, remaining in its natural condition"; that "no actual physical use is made of any portion of the 600 acres of vacant, unimproved raw land for which the exemption was denied"; and "the 600 nonexempt acres were 'used' by the plaintiff as follows: (a) For the protection of retreatants from outside influence. (b) For the furnishing of a situs through which the approximately 20 miles of exempt trails meander and as a surrounding for the several small, exempt religious shrines located on exempted property and as a surrounding for occasional religious ceremonies conducted on land for which an exemption was granted." The allocation by

the assessor of 9 acres for 20 miles of trails was premised on the conclusion the average width of the trails approximated not to exceed 3½ feet.

Applicable parts of Revenue and Taxation Code section 214, provide: "Property used exclusively for religious . . . purposes owned and operated by . . . corporations organized and operated for religious . . . purposes is exempt from taxation if:

" . . . . . . . . . . . . .

"(3) The property is used for the actual operation of the exempt activity;

" . . . . . . . . . . . . .

"(6) The property is irrevocably dedicated to religious . . . purposes and . . . will not inure to the benefit of any private person except a fund, foundation or corporation organized and operated for religious . . . purposes. . . ."[1]

The issue on appeal is whether, as found by the trial court, section 214 requires an actual *physical* use of the 600 acres for religious purposes as a condition to exemption.

Property used exclusively for religious purposes qualifies for the exemption if its use is incidental to and reasonably necessary for the accomplishment of those purposes. (*Cedars of Lebanon Hospital* v. *County of Los Angeles*, 35 Cal.2d 729, 736 [221 P.2d 31, 15 A.L.R.2d 1045]; *Y.M.C.A.* v. *County of Los Angeles*, 35 Cal.2d 760, 767 [221 P.2d 47]; *Serra Retreat* v. *County of Los Angeles*, 35 Cal.2d 755, 756, 758 [221 P.2d 59]; *San Francisco Boys' Club, Inc.* v. *County of Mendocino*, 254 Cal.App.2d 548, 552 [62 Cal.Rptr. 294].)[2] The nature of the use and the extent of the use are measured by the same test. As applied to the case at bench the property owned by plaintiff is exempt from taxation if its use is incidental to and reasonably necessary for the fulfillment of the religious purposes espoused by the Christward Ministry. The practice of conducting retreats in an environment conducive to prayer, meditation and contemplation as a method of attaining the religious purpose for which plaintiff was organ-

---

[1]Section 214 was amended in 1966 by modifying subdivision (3) as follows: "The property is used for the actual operation of the exempt activity, and does not exceed an amount of property reasonably necessary to the accomplishment of the exempt purpose."

[2]The 1966 amendment to the Revenue and Taxation Code, section 214, does not modify the general rule theretofore applied by the courts; but merely expresses statutorily an application of that rule to a specific situation.

ized is not questioned. The issue for determination is whether retreatants at Questhaven engaging in this practice used the 600 acres, or any part thereof, which the trial court held not exempt.

It is not necessary, as a condition to exemption, the use of the property for which an exemption is claimed should be indispensable to the religious purposes for which the corporation owning it is organized and operating it. (*Cedars of Lebanon Hospital* v. *County of Los Angeles, supra,* 35 Cal.2d 729, 745; *Sarah Dix Hamlin School* v. *City etc. of San Francisco,* 221 Cal.App.2d 336, 342 [34 Cal.Rptr. 376]; *Church Divinity School* v. *County of Alameda,* 152 Cal.App.2d 496, 503 [314 P.2d 209]; *House of Rest* v. *County of Los Angeles,* 151 Cal.App.2d 523, 532, 535 [312 P.2d 392].)

The requirement by the trial court that an actual ''physical'' use of property for religious purposes is a condition to exemption is predicated upon a strict and unreasonable interpretation of the statute granting an exemption to property ''used for the actual operation of the exempt activity.'' Such an interpretation must be rejected. (*Cedars of Lebanon Hospital* v. *County of Los Angeles, supra,* 35 Cal.2d 729, 735-736; gen. see *Wheaton College* v. *Town of Norton,* 232 Mass. 141 [122 N.E. 280, 282]; *Green Acre Baha'i Institute* v. *Town of Eliot,* 150 Me. 350 [110 A.2d 581, 584].) The statute does not restrict the exemption to property *physically* used for the exempt activity. In finding the shrines, meditation and rest sites, and the trails connecting them with the central area were the only areas used by retreatants, the court confined their purpose in using them to walking, sitting or standing. Eliminated from consideration was the environment in which the retreatants walked, sat or stood, which was furnished by the surrounding property maintained in its natural state. It would be absurd to hold the only part of the property within the boundaries of a national park used by visitors for park purposes is that improved with roads and trails. It is equally absurd to hold the only part of the property within the boundaries of a site maintained to provide an atmosphere conducive to prayer, meditation and contemplation used by retreatants for this purpose is that improved with trails, shrines, meditation and rest sites.     Where a statute is subject to interpretation a construction ''productive of absurd consequences'' should be rejected. (*Warner* v. *Kenny,* 27 Cal.2d 627, 629 [165 P.2d 889].)

Plaintiff contends the evidence establishes as a mat-

ter of law all of the 600 acres actually was used for religious purposes. ■ Whether property is used for a particular purpose, and also whether its use is incidental and reasonably necessary to that purpose ordinarily are questions of fact. (*San Francisco Boys' Club, Inc.* v. *County of Mendocino, supra,* 254 Cal.App.2d 548, 554; *Saint Germain Foundation* v. *County of Siskiyou,* 212 Cal.App.2d 911, 919 [28 Cal.Rptr. 393].) ■ The evidence in the case at bench does not permit a decision upon these matters as a question of law. In determining whether the amount of property reasonably necessary to provide a site for retreatants conducive to prayer, meditation and contemplation in the manner provided at Questhaven, the determination of those responsible for carrying out the religious purposes of the Christward Ministry should be respected. (*San Francisco Boys' Club, Inc.* v. *County of Mendocino, supra,* 254 Cal.App.2d 548, 553.)[3]
■ Property used for a religious purpose to be exempt from taxation must be irrevocably dedicated to that purpose. (Rev. & Tax. Code, § 214, subd. 6.) This requirement eliminates the probability self interest or individual profit motivates the determination by those entrusted with operating the exempt activity respecting the necessity for the use of the property subject to their control in the operation of the exempt activity. However, such determination is not conclusive. ■ In the case at bench, a part of the 600 acres is being held for future use. ■ Actual use and not intended use is the criteria for exemption. (*Cedars of Lebanon Hospital* v. *County of Los Angeles, supra,* 35 Cal.2d 729, 742.) ■ Whether use of the property on the hilltops and ridges overlooking the valley as a buffer zone is reasonably necessary to the use of

[3]Plaintiff's contention the decision in *San Francisco Boys' Club, Inc.* v. *County of Mendocino,* 254 Cal.App.2d 548, 553 [62 Cal.Rptr. 294], holds the determination of the owner of property engaged in an exempt activity that the whole thereof is incidental and necessary to the operation of the exempt activity is conclusive, is ill-founded; misinterprets that part of the opinion declaring ''in the absence of any showing of subterfuge or fraud, the determination of those responsible for carrying out'' the exempt activity ''should be respected''; overlooks the supporting reference by the court to the statement of Shenk, J. in a concurring and dissenting opinion in *Cedars of Lebanon Hospital* v. *County of Los Angeles,* 35 Cal.2d 729, 751 [221 P.2d 31, 15 A.L.R.2d 1045], respecting the nature of the use of property for hospital purposes that ''in this aspect the determination of necessity by the owners and operators *should be given proper weight* (Italics ours); and disregards the fact the trial court found the use of the whole of the property there under consideration was necessary for and used in the operation of the exempt activity in question.

the property in the valley for the religious purposes for which plaintiff was organized and operates is a question of fact. There is evidence the property outside the boundaries of Questhaven is unimproved for a considerable distance. What adverse effect prospective disturbing factors accompanying occupation of the buffer zone would have upon the use of the valley as a retreat also is a question of fact. Unless use of a part of the property as a buffer zone is reasonably necessary to insure use of the remainder of the property as a retreat, the former would not be incidental to a religious purpose.

Defendant contends the finding of the trial court the 600 acres is not exempt should be sustained on appeal because plaintiff had the burden of establishing the exempt character of its property; the trial court was entitled to reject evidence in support of its position; and, absent such evidence there is no proof the 600 acres were used for a religious purpose. We need not consider this contention because the decision of the trial court, as demonstrated by its finding, is premised upon the erroneous concept the use of property for religious purposes as a condition to exemption must be an actual *physical* use. ██ In this regard it is noteworthy the court found "the 600 nonexempt acres were 'used' by the plaintiff" for the protection of retreatants from outside influence and to furnish a situs through which approximately 20 miles of exempt trails meander, as a surrounding for religious shrines located on exempted property and as a surrounding for occasional religious ceremonies conducted on exempted land. The intent of this finding is clouded by the fact the word "used" is enclosed within quotation marks. For this reason it is not acceptable as a finding the action of plaintiff described by the term "used," as that term appears in the finding, is a use reasonably necessary to accomplish the religious purposes of operating a retreat. We conclude, in light of the views heretofore expressed, the trial court did not determine whether possession of the 600 acres, or any part thereof, and its maintenance in a wild state, is a use incident to and reasonably necessary for the operation of Questhaven as a retreat for religious purposes.

The judgment is reversed.

Brown (Gerald), P. J., and Whelan, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied June 11, 1969.